## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PNC BANK, N.A.,

           Plaintiff,

   v.                               1:13-cv-523-WSD

DANIEL R. PARKER and
RUTHANNE A. PARKER,

           Defendants.

## ORDER AND JUDGMENT

This matter is before the Court on Plaintiff PNC Bank, N.A.'s ("PNC")

Motion for Entry of Default Judgment [8].

## I.  BACKGROUND

This is an action to enforce agreements entered into by the Defendants

Daniel R. Parker and Ruthanne A. Parker (the "Parkers"), to purchase real property

in Henry County, Georgia (the "Property").  The Parkers borrowed money to

purchase the Property and in doing so they executed a note, in the principal amount

of $1,785,000.00 (the "Note") and a Loan Agreement.  The debt is secured by a

deed to secure debt, a security agreement and an assignment of rents (the "Security

Documents").  The Note constituted the Parkers' promise to repay the funds

borrowed, and the security documents, among other things, pledged the Property

as security for the Parkers' debt.

On February 19, 2013, Plaintiff filed its Verified Complaint on Promissory Note and Petition for Immediate Appointment of Receiver and Injunctive Relief (the "Complaint") [1].   The Complaint alleges that the Parkers are in default, including for failure to make payments as required by the Note, and that the Parkers have failed to cure the default.

The Complaint was served on the Defendants on March 11, 2013 [5, 6].  The Parkers failed to answer or otherwise respond to the Complaint and have not appeared or participated in this action.  As a result, on April 8, 2013, the Clerk of Court entered default against the Parkers.  On April 16, 2013, PNC filed its Motion for Entry of Default Judgment [8].  PNC seeks judgment in the amount of $1,867,712.94, and additional interest and the appointment of a receiver of the property pledged to secure the debt—remedies to which the Parkers agreed in the Note, Loan Agreement and Security Documents.

## II.  DISCUSSION

Rule 55(b) of the Federal Rules of Civil Procedure provides that default judgment may be entered against defaulting defendants as follows:

> (1) *By the Clerk.*  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due— must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

      (2) *By the Court.*  In all other cases, the party must apply to the court
         for a default judgment. . . .  If the party against whom a default
         judgment is sought has appeared personally or by a representative,
         that party or its representative must be served with written notice
         of the application at least 7 days before the hearing.  The court
         may conduct hearings or make referrals . . . when, to enter or
         effectuate judgment, it needs to:
         (A) conduct an accounting;
         (B) determine the amount of damages;
         (C) establish the truth of any allegation by evidence; or
         (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

"The entry of a default judgment is committed to the discretion of the district court . . . ." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985) (citing 10A Charles Alan Wright et al., Federal Practice and Procedure § 2685 (1983)). When considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief. Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988). "[W]hile a defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" Cotton, 402 F.3d at 1278 (second alteration in original) (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

The Court, having considered the Motion for Entry of Default Judgment and the facts alleged in PNC's Complaint, determines there is a sufficient factual and legal basis to enter default judgment against the Parkers pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. The Court determines further that the Complaint states a plausible claim for relief. See Cotton, 402 F.3d at 906. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff PNC Bank, N.A.'s Motion for Entry of Default Judgment [8] is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment be entered in favor of PNC Bank, N.A. and against Defendants Daniel R. Parker and Ruthanne A. Parker, jointly and severally, in the amount of $1,867,712.94, plus interest at the *per diem* rate of $305.30 for each day from February 4, 2013, through and including the date of this Order, plus post-judgment interest at the rate set by law.

**IT IS FURTHER ORDERED** that a Receiver be appointed over all that tract or parcel of land lying in and being in Land Lots 58 and 71 of the 12th District of Henry County, Georgia, in the City of Stockbridge, a legal description of which is attached hereto as Exhibit 1, together with all buildings, improvements, and structures situated on said tract or parcel and all real and personal property located in, on, or about said tract or parcel or used or intended to be used in

connection therewith, as described more particularly in the Complaint as the "Property," currently owned by the Parkers.

Hays Financial Consulting, LLC is thus hereby **APPOINTED** as Receiver beginning on the date this Order is entered until further Order of this Court, the foreclosure of the Property by Plaintiff or its assignee (unless Plaintiff elects to retain the Receiver following foreclosure of the Property), or the sale of the Property by the Receiver pursuant to the terms of this Order.

The Receiver shall have the following authority and duties:

(a)     to take from the Parkers and their agents and employees immediate custody, possession, and control of the Property and all things of value located on or relating to the Property; and to exclude the Parkers and their agents and employees from such possession;

(b)     to take possession of all bank accounts containing funds associated with the Property, whether in the name of the Property, the Parkers, or any agents or employees of the Parkers, wherever located; to add or delete signers on such bank accounts; and to open, transfer, and change all bank and trade accounts relating to the Property, so that all such accounts are in the name of the Receiver;

(c)     to contact tenants of the Property and to collect from the tenants any rents and other sums due from said tenants;

(d)     to collect, hold, and preserve all rents, revenues, income, profits, and other benefits of and generated by the Property (the "Revenues of the Property") whether arising before or after entry of an order granting the requested relief;

(e)     to manage and operate the Property;

(f)     with the approval of Plaintiff and the Court to enter into such contracts as may be necessary to operate, maintain, and preserve the Property;

(g)     to pay from the Revenues of the Property the ordinary and necessary expenses of owning, operating, and maintaining the Property incurred from and after the date of the Receiver's appointment, as approved by the Court;

(h)     to maintain and control the Property by paying taxes, insurance and utility charges;

(i)     with the approval of Plaintiff and the Court, to pay such other Expenses of the Property as may have been incurred prior to the date of the Receiver's appointment, as the Receiver deems reasonably necessary and appropriate to ensure the continued efficient operation of the Property;

(j)     to pay from the Revenues of the Property such premiums and renewal fees and premiums as necessary to maintain in force and effect all existing insurance policies covering the Property or any portions thereof, to add the Receiver as a named insured under such policies, and, with the approval of Plaintiff, to purchase any such other insurance as may be reasonably necessary to provide the insurance coverage required under the terms of the Security Deed;

(k)     to pay over to Plaintiff all Revenues of the Property not used by the Receiver to pay Expenses of the Property in accordance with the order granting the requested relief, to the extent necessary to pay the Judgment entered in this Order;

(l)     to make an accounting and keep accurate records concerning the operation of the Property, including the actual Revenues of the Property collected and the expenses paid each month, and to make such records available to Plaintiff, the Parkers, and the Court. Such recordkeeping will not extend to any responsibility to prepare state or federal income tax returns for any period for the Property or the Parkers, or any payroll tax returns for periods prior to the appointment of the Receiver;

(m)     to permit Plaintiff and its agents and independent contractors to fully inspect the Property;

(n)     to comply with all requirements of all governmental authorities relating to the ownership or operation of the Property;

(o)     to apply for, obtain, and renew, as necessary, all licenses, certifications and permits required for the operation of the Property and the improvements thereon; and to take such actions and expend such sums from the Revenues of the Property as may be necessary to obtain or maintain in effect all licenses, certifications, permits, zoning approvals, and other approvals to ensure that the Property and the improvements thereon may continue to be operated as commercial office space or another similar use;

(p)     with respect to any operation or activity that is now conducted on the Property, and that may lawfully be conducted only upon governmental license or permit, to continue such operation or activity under the licenses or permits issued to the Parkers its agents or employees, subject to compliance with the terms thereof;

(q)     to collect from any source, government or private third-party payor, all sums which may be due for the services or goods provided to any person occupying the Property;

(r)     with the approval of Plaintiff, to institute, prosecute, defend, and settle such legal proceedings as the Receiver deems necessary, relating to the protection or proper care of the Property and the collection of rents or other payments of any description now due or hereafter to become due, including summary proceedings for the removal of tenants or other persons therefrom, and to employ counsel therefor;

(s)     to contract for and to obtain those essential services (including utilities), supplies, equipment and goods as are reasonably necessary to operate, preserve, and protect the Property and the licenses and permits necessary for the continued operation of the Property;

(t)     with the approval of Plaintiff, to make such repairs to the grounds and improvements on the Property as the Receiver may reasonably deem necessary, as approved by the Court;

(u)     with the approval of Plaintiff, to enter into contracts for those services necessary to aid the Receiver in the administration of the Receivership, with all reasonable expenses incurred in connection therewith deemed to be expenses of the Receivership;

(v)     with the prior written approval of Plaintiff, to lease the Property or any portion thereof or any tenant space or other interest therein, including the right to engage one or more third-party leasing agents,

and the costs of any such leasing agent shall be paid from proceeds of the leasing of the Property or such portion or portions thereof or such tenant space or other interest therein, and the Receiver shall have the right to negotiate the terms of any such lease and the right to execute and deliver any and all documents necessary to consummate any such lease of the Property or any portion thereof or tenant space or other interest therein;

(w)     at the request and with the prior written approval of Plaintiff, to investigate and evaluate whether the best interests of Plaintiff and Defendants would be served by either a public sale or a private sale of all or any portion or portions of the Property or any interests therein, and with the prior written approval of Plaintiff, to engage such appraisers, real estate brokers, property managers or other professionals as may be necessary to conduct such investigation and evaluation;

(x)     if in its investigation and evaluation the Receiver determines that a public sale of all or any portion or portions of the Property or any interests therein would be in the best interests of Plaintiff and Defendants, then, with the prior written approval of Plaintiff, the Receiver shall arrange, advertise, and conduct a public sale of the

Property or such portion or portions thereof or such interests therein in the same manner and with the same effect as sales are made under power of sale in Georgia pursuant to O.C.G.A. §§ 44-14-162 through 162.4, and the Receiver shall have the right to execute and deliver on behalf of Defendants as Defendants' attorney-in-fact any and all documents necessary to consummate such sale and to deliver marketable title to the Property or such portion or portions thereof or interests therein, free and clear of any liens, claims, or encumbrances that are inferior in priority to the lien of the Security Deed;

(y)    if in its investigation and evaluation the Receiver determines that a private sale of all or any portion or portions of the Property or any interests therein would be in the best interests of Plaintiff and Defendants, then, with the prior written approval of Plaintiff, the Receiver shall seek to sell the Property or such portion or portions thereof or interests therein in a private sale, and the Receiver shall have the right to execute and deliver any and all documents necessary to consummate any such sale, subject to the following conditions and limitations:

(1)    if approved by Plaintiff and without further notice, hearing, or order of the Court, the Receiver shall have the following

authority and duties: (i) to engage a real estate broker to market the Property or any portion or portions thereof or interests therein for sale, and the costs of such broker shall be paid from the proceeds of the sale of the Property, (ii) to enter into negotiations to sell the Property or any portion or portions thereof or interests therein, (iii) to enter into and execute a purchase and sale agreement for the Property or any portion or portions thereof or interests therein and execute and deliver any deeds or other documents necessary to convey title to the Property or any such portion or portions thereof or any such interest therein in the name, place, and stead of Defendants, (iv) to execute any and all documents and agreements necessary to sell the Property or any portion or portions thereof or interests therein for any amount Plaintiff deems reasonable, free and clear of any and all liens, claims, and encumbrances, (v) to turn over the proceeds of such sale to Plaintiff, and (vi) to execute any and all documents and agreements necessary to transfer, to the extent permitted by law, any and all licenses and permits relating to the Property, and take any other actions with respect to such licenses and permits in order to assist any buyer or other

transferee of any of the Property for the purposes of allowing such buyer or other transferee to occupy and/or continue to operate the Property uninterrupted under such licenses and permits or under temporary licenses;

(2)     Defendants shall be deemed to consent to any such sale of the Property by the Receiver without obtaining the consent or participation of and without notice to Defendants in any manner and without further order of the Court.  To the extent that any such sale results in a full payoff of all amounts due under the Loan (including, without limitation, principal, contract rate interest, default interest, late charges, expenses, and prepayment premiums) and there are excess proceeds, Plaintiff shall deliver such excess proceeds to Defendants;

(3)     Defendants shall not oppose, impede, obstruct, hinder, enjoin, delay, or otherwise interfere, and will cooperate, to the extent that cooperation is requested, and comply with the exercise by the Receiver of any steps taken by the Receiver to lease, market and sell the Property, including, without limitation, any sale by the Receiver on terms acceptable to Plaintiff in Plaintiff's sole discretion.  Defendants shall not have the right to participate in

the Receiver's actions under this Section and to the extent that the Receiver conducts a sealed bid process for the sale of the Property, Defendant shall not have the right to receive the bids or any report thereof unless and until the Receiver has accepted a bid or rejected all bids; and

(4)     any buyer of any of the Property, and any title insurance company issuing title insurance in favor of any such buyer of any of the Property, is and shall be fully entitled to rely upon the authority granted to the Receiver by order of this Court to execute and deliver on behalf of Defendants any and all documents as may be necessary and appropriate in connection with the sale of the Property, including any and all documents required by a title insurance company in order in order to issue title insurance to any such buyer of any of the Property, without the need for any further action by this Court or Defendants itself as opposed to the Receiver on behalf of Defendants.

Upon entry of this Order, subject to the terms, conditions, and limitations set forth above, the Receiver, subject to the consent of Plaintiff, shall have the sole right to lease, market, and/or sell the Property, including the right to execute and deliver any and all necessary documents to consummate any lease or sale of the

Property, including, but not limited to, any leases, contracts, and/or deeds, without further notice, hearing, or order of the Court, and any buyer of any of the Property, and any title insurance company issuing title insurance in favor of any such buyer of any of the Property, is and shall be fully entitled to rely upon the authority granted to the Receiver pursuant to this Order, including, without limitation, the authority of the Receiver to execute any and all documents required by a title insurance company in order in order to issue title insurance to any such buyer of any of the Property.

To the extent such approval is necessary, any sale of the Property by the Receiver in accordance with this Order shall be and hereby is confirmed in accordance with O.C.G.A. § 23-4-35.

Defendants and their managers, members, partners, independent contractors, agents, affiliates, servants, attorneys, officers, directors, shareholders and employees, and all persons acting in concert or participation with them, under their control or on their behalf, directly or indirectly, are ordered and directed to pay and turn over immediately to the Receiver, and to perform all acts necessary to transfer to the Receiver, all funds on hand in cash, all funds held in deposit accounts of or for the benefit of Defendants arising from the ownership, possession, management, or operation of the Property, all accounts (including without limitation tax, utility, or security deposit accounts), accounts receivable, operating reserves, and any

other collectibles and all keys, books, records, equipment, leases, licenses, permits, and certificates, Federal Employer Identification Number and state tax or license identification numbers, and all other things in any manner related to the ownership, possession, management, or operation of the Property.

Until further Order of this Court, Defendants and their partners, independent contractors, agents, servants, attorneys, and employees, and all those persons acting in concert or participation with them, under their control or on their behalf, directly or indirectly, are enjoined as follows:

(a) from possessing, managing, or operating the Property and from interfering in any way with the possession, management, or operation of the Property by said Receiver;

(b) from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of funds or revenues derived from the operation of the Property and from paying any such funds to or for the benefit of themselves or any other party; and

(c) from removing any property from the Property and from removing, destroying, concealing, changing, or altering, in any manner, any of the books or records relating to the ownership, possession, management, or operation of the Property.

Upon subsequent application to this Court, and subject to this Court's approval as to the amount, Plaintiff shall be awarded such attorneys' fees as are allowed pursuant to O.C.G.A. § 9-8-13 (in addition to and without prejudice to Plaintiff's right to attorneys' fees under the Security Deed and/or O.C.G.A. § 13-1-11), out of funds collected by the Receiver.

Any brokerage institution, escrow/title company, financial institution, bank, savings and loan, mutual fund, or any other person, partnership, limited liability company, or corporation maintaining or having custody or control of any brokerage or deposit account or other assets of any of the Receivership estate, and that receives actual notice of this Order, by personal service, facsimile transmission, or otherwise, shall, within three (3) business days of receipt of that notice, serve on the Receiver a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice, and shall deliver all such funds or other assets to the Receiver.

Except for an act of gross negligence or willful misconduct, the Receiver and all persons engaged by or employed by the Receiver shall not be liable for any loss or damage incurred by Defendants, or any other person, by reason of any act performed or omitted to be performed by the Receiver or any person engaged by or

employed by the Receiver in connection with the discharge of their duties and responsibilities in this matter.

The requirement of posting a bond pursuant to O.C.G.A. § 9-8-10 is hereby waived.

Nothing contained within this Order, nor the grant or exercise of any powers provided for herein by the Receiver shall cause said Receiver to be considered a past or present owner, operator or other potentially responsible or liable party pursuant to any provision of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*; the Georgia Hazardous Site Response Act ("HSRA"), O.C.G.A. § 12-8-90 *et seq.*; or incur liability based on ownership or operation of the Property pursuant to any other statutory, regulatory, common law or strict liability theory.  Furthermore, to the extent hazardous substances, wastes or constituents are known or discovered to be present upon the Property, the Receiver shall not be considered to be in any direct or indirect contractual relationship with any party responsible for such substances, wastes or constituents pursuant to CERCLA and/or HSRA, and shall instead be considered to be acting solely in a "fiduciary" capacity with respect to the Property, pursuant to Section 107(n) of CERCLA, 42 U.S.C. § 9607(n), and HSRA, O.C.G.A. §12-8-92(7)(C).

If either Defendant files or is the subject of a bankruptcy petition during the Receivership, the Receiver shall, as soon as possible after being advised of such bankruptcy petition, give prompt notice of the bankruptcy case to the Court, and to all other parties to this action, if any.

If the Receiver receives notice that a bankruptcy petition has been filed and part of the bankruptcy estate includes real or personal property that is the subject of this Order, the Receiver shall have the following duties:

The Receiver shall immediately contact Plaintiff and determine whether that party intends to move in the bankruptcy court for an order for (1) relief from the automatic stay, and (2) relief from the Receiver's obligation, under 11 U.S.C. § 543, to turn over the property. If the party has no intention to make such a motion, the Receiver shall immediately turn over the property constituting the Receivership Estate to the appropriate entity: either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 U.S.C. § 543.

If Plaintiff intends to seek relief immediately from either the automatic stay and the Receiver's obligation to turn over the property of the Receivership Estate, the Receiver may remain in possession and preserve the property of the Receivership Estate pending the ruling on such motion(s), in accordance with 11

U.S.C. § 543(a). The Receiver's authority to preserve the property comprising the Receivership Estate during this period shall be limited as follows:

The Receiver may continue to collect rents and other income;

The Receiver may make only those disbursements necessary to operate, preserve and protect the Receivership Estate's property;

The Receiver shall not execute any new rental, sales contracts, or other long-term contracts or leases; and

The Receiver shall do nothing that would effect a material change in the condition of the Receivership Estate's property.

If Plaintiff fails to file a motion within 14 days after receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Receivership Estate's property to the trustee in bankruptcy, if one has been appointed or, if not, to the debtor in possession and otherwise comply with 11 U.S.C. § 543.

Nothing in this Order shall preclude Plaintiff or any assignee of Plaintiff from exercising any other rights or remedies it may have, whether arising under the Loan Documents (as defined in the Complaint), at law or in equity, including, without limitation, Plaintiff's right to foreclose pursuant to the power of sale contained in the Security Deed.

Upon termination of the Receiver's duties, as a result of the foreclosure of the Property (unless Plaintiff elects to retain the Receiver following foreclosure of

the Property) or order of this Court, the Receiver shall file a final report with respect to the operations of the Property and a final fee and expense application in form and substance satisfactory to Plaintiff, unless Plaintiff waives this requirement.

      **SO ORDERED** this 7th day of May, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE